# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PRESTON JOHNSON,

       Plaintiff,

       v.                                 Case No. 08-C-471

ERIC K. SHINSEKI,[1]
Secretary of the Department of Veterans Affairs,

       Defendant.

## DECISION AND ORDER
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## NATURE OF CASE

Plaintiff Preston Johnson filed this action on May 28, 2008, alleging that the defendant unlawfully retaliated against him for filing discrimination complaints during his employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq, as amended (Title VII).  The plaintiff asserts that he experienced reprisal for engaging in protective activity, which included "being denied promotional opportunities and having an EEO [Equal Employment Opportunity] document placed within his Official Personnel File [hereinafter 'OPF'] which had an adverse impact on his employment opportunities."  (Complaint at 2).

Specifically, he asserts that he made initial contact with the Department's Office of Resolution Management (ORM) on March 19, 2007, to file a complaint that the "Department

---

[1] The Honorable Eric K. Shinseki replaced R. James Nicholson as the Secretary of the United States Department of Veterans Affairs on January 21, 2009.  Accordingly, Mr. Shinseki has been substituted for Mr. Nicholson as the defendant in this action.

had retaliated against him by denying him a promotion to the Mental Health Peer Support Technician position." (Complaint at 3). He filed a formal Complaint of Employment Discrimination on April 23, 2007. The plaintiff further alleges that on August 24, 2007, he again made an initial contact with ORM to file another complaint in which he "alleged that the Department retaliated against [him] by unlawfully retaining an EEO document in his OPF which led to a denial of promotional opportunities." Id. The plaintiff filed a formal Complaint of Discrimination on September 20, 2007.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

The defendant has filed a motion for summary judgment. The motion is fully briefed and will be addressed herein. At the outset, however, the court notes that the parties' briefs discuss four promotions the plaintiff claims allegedly were denied as a direct result of his prior EEO activity: (1) a Mental Health Peer Support Technician/Health Technician (Peer Support Technician) position in 2007; (2) a Domiciliary Assistant position in 2006; (3) a Health Technician position in 2004; and (4) a Domiciliary Assistant position in 2001 or 2002. The plaintiff's complaint does not contain any reference to the last three positions. Rather, the Peer Support Technician position is the only claim asserted in the complaint.

The parties basically addressed all four positions in their briefs based on the plaintiff's answers to interrogatories. In those answers, he asserted that he was denied all four

- 2 -

promotions because of the EEO document which was placed in his OPF. <u>See</u> Declaration of Michael T. Newman [Newman Declaration], Exh. 6 at 1-2. In opposing the motion for summary judgment. however, the plaintiff disavowed any claims related to the denial of the 2006 Domiciliary Assistant position. (Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment [Plaintiff's Brief] at 19-20). Because the parties have addressed the remaining claims, the court will do so as well.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>McNeal v. Macht</u>, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." <u>See</u> <u>Anderson</u>, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd.</u>, 475 U.S. 574, 587 (1986); <u>Matter of Wade</u>, 969 F.2d 241, 245 (7th Cir. 1992).

- 3 -

"'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" Smith ex rel. Smith v. Severn, 129 F.3d 419, 426 (7th Cir. 1997(quoting United States v. Diebold, Inc., 369 U.S. 654, 655 [1962] [per curiam]); see also, Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir.) (quoting Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 [7th Cir. 1993] [collecting cases]).  "The choice between reasonable inferences from facts is a jury function."  Smith, 129 F.3d at 426; see also, Anderson, 477 U.S. at 255.

When the nonmovant is the party with the ultimate burden of proof at trial, however, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial.").  "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

In some instances, the evidentiary citation to a proposed finding of fact or a response to a finding of fact does not support the finding.  Any such proposed factual finding has not been included in the relevant undisputed facts.  To the extent that an objection to a proposed finding of fact fails to cite specific evidentiary support, the objection has no weight.  See Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000); Doe v. Cunningham, 30 F.3d 879, 881 (7th Cir. 1994).  Moreover, if an objection is non-responsive to the proposed finding

- 4 -

of fact, the objection does not create a dispute of fact. Similarly, arguments have no place in proposed findings of fact or responses to such findings. Therefore, any such "finding" has not been included in the undisputed findings of fact.

## RELEVANT UNDISPUTED FACTS[2]

The plaintiff was employed at the Zablocki Veterans Affairs Medical Center (ZVAMC) by no later than March of 1998,[3] at which time he was working as a WG-1 Housekeeping Aid, in the Facilities Management Division. In August of 1999, he was promoted to a WG-2 Housekeeping Aid, and in July of 2003, he was promoted to a GS-3 Health Technician in the Primary Care Division. The plaintiff obtained this health technician position pursuant to a settlement he reached with the Veterans Administration (VA) in response to a complaint he had filed with the Equal Employment Opportunity Commission (EEOC) and had subsequently amended.

At the time the defendant's summary judgment motion was filed, the plaintiff had been employed at the ZVAMC as a GS-5 Health Technician in the Primary Care Services Division since January of 2005. The plaintiff had also worked at the Milwaukee County Behavioral Health Complex as a nursing assistant since March of 2003, where he assisted the daily living of individuals with schizophrenia, developmental disabilities, bipolar, depression, and any other

---

[2] As a general matter, unless accompanied by citation, the relevant facts are taken from the parties' proposed findings of fact that are not disputed. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

[3] The parties' proposed findings of fact contradict each other as to when the plaintiff became an employee of the United States Department of Veterans Affairs (VA). The plaintiff states that he became a compensated work therapy worker in the patient care program for the VA in the beginning of 1997, and became an employee of the VA on September 14, 1997. The defendant's proposed findings of fact, however, state that the plaintiff was hired by the Zablocki Veterans Affairs Medical Center in March of 1998.

- 5 -

type of mental health issue. The plaintiff has not worked in the Mental Health Division of the ZVAMC, but rather has worked only in the Facilities Management Division and the Primary Care Division.

The plaintiff filed two EEO complaints relevant to this case. On April 23, 2007, the plaintiff signed an EEO complaint alleging that because of his prior EEO activity, he was not selected for the position of Mental Health Peer Support Technician/Health Technician on March 19, 2007. On September 20, 2007, the plaintiff signed an EEO complaint alleging that he had been subjected to reprisal because EEO material was placed in his Official Personnel File (OPF). The plaintiff has never seen an EEO document in his OPF, nor has he identified the EEO material in his OPF or stated when such EEO material was placed in his file.

The United States Office of Personnel Management (OPM) publishes directives governing the types of documents that may be placed in a federal employee's official OPF. The regulations are published in a document entitled, "Operating Manual, The Guide to Personnel Recordkeeping." OPM regulations prohibit the Agency from including EEO complaints, documents related to complaints, settlement agreements, and documents related to settlement agreements in an employee's OPF.

**Peer Support Technician Position – 2007**

In late December of 2006, the ZVAMC's Mental Health Division posted a Promotion Announcement for Vacancy Announcement MP 06-90 ML, for a Peer Support Technician, GS-640-5 target GS-6 or GS-6. The position involved serving as "an active member of the Psychosocial Rehabilitation and Recovery Program and provid[ing] peer support services to veterans with serious mental illnesses in the Mental Health Outpatient Clinic." (Declaration

- 6 -

of Dennis Thompson [Thompson Declaration], Exh. 1 at 1). The announcement listed the following "Rating Factors:"

> 1) Knowledge of serious mental illness diagnoses, signs and symptoms including substance abuse disorders and current trends and developments in the mental health field.
>
> 2) Knowledge and skills to teach and engage in problem-solving and conflict resolution strategies.
>
> 3) Knowledge of community resources to facilitate community integration.
>
> 4) Knowledge of the recovery process and ability to facilitate recovery dialogs [sic].
>
> 5) Have you taken classes in mental health related courses? If yes, please describe.
>
> 6) Do you have a valid state driver's license?

Id. at 2.

A total of fifty-five individuals applied for the position, including twenty-one ZVAMC employees and thirty-four external candidates. John Polulach, a ZVAMC human resources specialist, initially determined that eleven of the ZVAMC employees and twenty-two of the external candidates were qualified for the position. After Mr. Polulach made this initial determination, James Hart, Ph.D., a subject matter expert, evaluated the qualified candidates based on the Rating Factors to identify the best qualified candidates. Of the thirty-three qualified applicants rated by Mr. Polulach and Dr. Hart, the plaintiff's score rated him higher than eighteen, lower than eleven, and the same as three of the applicants. Mr. Polulach and Dr. Hart then provided the interview panel with the list of best qualified candidates, along with the candidates' application forms and responses to the Rating Factors. They did not, however, provide the interview panel with their rating scores for each candidate.

- 7 -

Program Managers Dennis Thompson and Florence Mehalic made up the core interview panel for the Peer Support Technician position. Mr. Thompson was the selecting official for the position and he conferred with Ms. Mehalic regarding the final selections. The third interviewer was either a psychiatrist or a clinical nurse specialist. This third person was either: (1) Mary Klatt, who participated in the interviews of the plaintiff, Dorothy McCollum, Kevin Kavanaugh and Timothy McCormick; or (2) David Cory, who participated in the interview of Nathaniel Brown; or (3) Dr. Gunnar Larson, who participated in the interviews of Joe Jenkins, Ricky Davis, Ken Labre, and Erin Behn. Mr. Thompson, Ms. Mehalic and Ms. Klatt interviewed the plaintiff on March 2, 2007.

All interviewees, including the plaintiff, were asked the following questions and had each answer rated on a scale from 1 to 5 (1 = poor; 5 = excellent):

> INTERPERSONAL EFFECTIVENESS: What did you do in your last job to contribute to a team environment? Be specific.

> CUSTOMER SERVICE: Talk about a situation in the past year in which you had to deal with a very upset patient or co-worker. What did you do? What was the outcome?

> SYSTEMS THINKING: Give a specific example of a time when you were helpful to someone who was experiencing a mental health problem.

> FLEXIBILITY/ADAPTABILITY: Talk about a specific occasion when you conformed to a policy even though you did not agree with it.

> CREATIVE THINKING: Talk about a specific example of a time when you used your life experiences in solving a problem with someone else.

> ORGANIZATIONAL STEWARDSHIP: What are the strengths you possess that would make you a good candidate for this position? In what areas do you consider you may not be quite as strong?

- 8 -

PERSONAL MASTERY:  Tell us about a time when you had to handle multiple responsibilities.  What did you do to manage the task?

TECHNICAL:   Talk about a specific time when you had to negotiate with a group of people to obtain their cooperation? [sic]

(Thompson Declaration at 3).  Ms. Mehalic selected the interview questions from the VA's on-line resource for performance-based interviews and Mr. Thompson approved them.

Following is a summary of the ratings given to the plaintiff and to the individuals who were ultimately selected for the Peer Support Technician position:

| Interviewer | D. McCollum | J. Jenkins | K. Kavanaugh | R. Davis | Plaintiff |
|---|---|---|---|---|---|
| Dennis Thompson | 40 | 39 | 34 | 32 | 23 |
| Florence Mehalic | 40 | 39 | 34 | 32 | 21 |
| Mary Klatt | 40 | -- | 33 | -- | 24 |
| Dr. Larson | -- | 39 | -- | 32 | -- |
| Total | 120 | 117 | 100 | 96 | 67 |

(Thompson Declaration, Exh. 4).  The plaintiff scored lower than all of the selectees on the interview question which assessed flexibility and adaptability.

The ratings were determined before any of the interviewers were aware that the plaintiff had engaged in EEOC activity.  None of the individuals who interviewed the plaintiff were aware at the time of the interview and the interview rating that he had engaged in prior EEO activity.  In their interview notes, which were taken contemporaneously during the interviews, all three interviewers noted that, when asked about his weaknesses, the plaintiff mentioned being "too aggressive" or "overly aggressive."  (Newman Declaration, Exh. 16 at 14-16; Exh. 14 at 6-7; Exh. 15 at 18).

- 9 -

In applying for the Peer Support Technician position, the plaintiff submitted a handwritten application in pencil which had words that he had scratched out, although the VA has an electronic system that would have allowed him to submit a typed application. Ms. Mehalic also found it significant that the plaintiff's answers during the interview were very brief and did not give the interviewers much information. The main qualifications the interviewers were looking for in the candidates were an ability to engage people, an openness to others, and being easy to approach.

After the interview, Mr. Thompson had written "no" in his notes next to the plaintiff's name, but he testified that the plaintiff was still "in the running" for one of the four Peer Support Technician positions after the interviews had been completed. (McDonald Declaration, Exh. 12 at 16). According to Mr. Thompson, the plaintiff had a satisfactory interview. The plaintiff was one of only six candidates still in the running for the position at this point, and became one of only five candidates shortly thereafter when one of the candidates was dropped from consideration.

Upon completion of the interviews and the rating of the candidates, Mr. Thompson went to look at the OPFs of the three remaining candidates who were employed at the ZVAMC. When Mr. Thompson looked at the OPFs, he was not sure what to look for given that he was new to his position. He was at least looking for the employees' performance appraisals to see what they stated.

In the plaintiff's OPF, Mr. Thompson saw the plaintiff's 2004 performance appraisal, which contained the following text in the "comments" section:

> Preston Johnson continues to grow in Primary Care. He seeks other staff members out [with] questions he may have. He keeps the Veteran as his number 1 goal. He takes pride in his work! One of his goals that I would like

> him to work on is his Interpersonal communications!  He is always ready to assist and learn new ideas – He has been upgraded to a GS4!

(McDonald Declaration, Exh. 3 at 1).

The plaintiff's OPF also contained his 2005 performance appraisal, which included the following in the "comments" section:

> Mr. Johnson works well with the Veteran, his intake skills are very good, He addresses the clinical reminders and enters the information correctly.  A goal that I would like to have Mr. Johnson work on is his interpersonal skills!

Id. at 2.  This performance appraisal also contains a notation that the plaintiff refused to sign the document. The plaintiff's 2006 performance appraisal said nothing about the plaintiff's interpersonal skills.

The plaintiff's 2004 and 2005 performance appraisals rated him as "successful" on a scale of "successful" or "unacceptable." Id. at 1-2.  The plaintiff's 2006 and 2007 performance appraisals rated him as "fully successful." Id. at 3, 7.  None of the selected candidates had similar performance reviews noting interpersonal problems, nor did any of the selected candidates refuse to sign a performance review.

Mr. Thompson found these appraisal comments important because the interview panel was looking for someone with good negotiation skills and a good ability to work with people. These performance appraisal comments caused Mr. Thompson to be "downgraded as a candidate" in Mr. Thompson's evaluation of the plaintiff.  (Thompson Declaration, Exh. 10 at 6).

After reviewing the performance appraisals in the plaintiff's OPF on March 5 or 6, 2007, Mr. Thompson saw a document in the file relating to the  EEO.  When Mr. Thompson first saw the document in the plaintiff's OPF, he did not know what it was and asked Mr. Polulach, an

- 11 -

HR Specialist, about the document. Mr. Polulach informed him that it was an EEO complaint. Mr. Thompson described the document as follows:

> Question: What information was in the Official Personnel Folder of the [plaintiff] pertaining to his participation in a prior EEO activity?
>
> Response: Official form notifying complaint.

(Thompson Declaration, Exh. 10 at 6). Mr. Thompson did not read the document. At his deposition, Mr. Thompson described the document as follows: "It was in letter form. I believe it was a correspondence just indicating that there was a file – or was an EEO complaint." (Newman Exh. 16 at 8).

Shortly after reviewing the OPFs and discovering the EEO document in the plaintiff's OPF, Mr. Thompson met with Ms. Mehalic to discuss the qualifications of the five remaining candidates. During their discussion, Mr. Thompson told Ms. Mehalic that the plaintiff had filed an EEO complaint. The plaintiff's third interviewer, Ms. Klatt, first became aware of the plaintiff's prior EEO activity after the selection process had been completed, when she received a telephone call to set up a time to provide her written affidavit for the ORM investigation in this case.

After contacting the candidates' references and reviewing their OPFs, Mr. Thompson and Ms. Mehalic agreed that the four top-rated candidates should be selected for the position, namely Dorothy McCollum, Joe Jenkins, Kevin Kavanaugh, and Ricky Davis. Mr. Thompson and Ms. Mehalic decided that the plaintiff would not be hired into one of the four open Peer Support Technician positions. This decision was made a few days after Mr. Thompson had looked at the plaintiff's EEO complaint.

**EEO Documentation in the Plaintiff's OPF**

- 12 -

In early 2007, Labor Relations Specialist Randy Spahos was making a copy of the plaintiff's OPF in response to a request from the Office of Regional Counsel (ORC). Mr. Spahos noticed that a 2003 EEO Settlement and Compromise Agreement in the plaintiff's OPF, which included a provision that the plaintiff was to be promoted to a Health Technician position. Because Mr. Spahos knew that the settlement agreement should not be in the OPF, he removed it and had it shredded. The agreement was signed on June 23, 2003, and, therefore, could not have been in the OPF before it was executed in June 2003. Mr. Spahos did not find any other EEO documents in the OPF.

On April 27, 2006, a copy of the plaintiff's OPF was sent to Attorney Shannon D. McDonald as part of the VA's answers to interrogatories and requests for production of documents for a separate pending EEO case filed by the plaintiff. This copy of the plaintiff's OPF sent to Attorney McDonald contained a copy of the EEO Settlement Agreement dated June 6, 2003, which was signed by the plaintiff on June 23, 2003. The 2003 EEO Settlement Agreement's caption included the words "EEO Complaint," along with the agency case number, the date, the names of the parties and the title of the document. The 2003 EEO Settlement Agreement was not in existence in 2001 or 2002 because the plaintiff and the other parties to it first signed the agreement on June 23, 2003.

**Health Technician Position – 2004**

In approximately July, 2004, the plaintiff applied for the position of Health Technician. Marilyn Denning was required to determine whether candidates were qualified for the position they had applied for. In order to make this determination, she reviewed ZVAMC employees' official personnel files. In reviewing the plaintiff's OPF, she determined that the plaintiff was a GS-4 and not a GS-5 and, therefore, he did not have sufficient time in grade to qualify for

- 13 -

the position of Health Technician, GS-6 Target GS-7 or GS-7 at the time of his application. When Ms. Denning made the determination that the plaintiff did not have sufficient time in grade, she was not aware that he had engaged in any prior EEO activity. When she reviewed his OPF in 2004, she did not observe any EEO-related letters or documents.

## ANALYSIS

The plaintiff maintains that he "has experienced reprisal for engaging in protected activity. Such reprisal includes, but is not limited to, being denied promotional opportunities and having an EEO document placed within his Official Personnel File . . . which had an adverse impact on his employment opportunities." (Complaint at 2). He asserts in his brief that he was denied a number of promotional positions between 2001 and 2007 in retaliation for his prior EEO activity, which included filing various EEO complaints against the VA and its employees. As noted, the plaintiff disavowed claims relating to the Domiciliary Assistant position in 2006. The positions which remain are: (1) a Mental Health Peer Support Technician position in 2007; (2) a Health Technician position in 2004; and (3) a Domiciliary Assistant position in 2001 or 2002.

As to the plaintiff's claim regarding the 2007 Peer Support Technician position, the defendant maintains that the plaintiff lacks the evidence necessary to establish a causal connection between his prior EEO activity and his denial for the position. The defendant also asserts that the plaintiff cannot establish a prima facie case of retaliation because he cannot prove that similarly situated candidates outside of his protected class received the Peer Support Technician position. The defendant also argues that even if the plaintiff can establish a prima facie case, the defendant has offered a non-pretextual, nondiscriminatory reason for not selecting the plaintiff, namely, that he was not the most qualified candidate for the position.

- 14 -

Regarding the 2004 Health Technician position, the defendant asserts that the ZVAMC employee who determined that the plaintiff lacked the technical requirements for the position was unaware of the plaintiff's prior EEO activity and, therefore, could not have retaliated against him. With respect to the 2001/2002 Domiciliary Assistant position, the defendant maintains that the plaintiff cannot establish retaliation because there is no evidence that the plaintiff's OPF contained any EEO documents at the time that position was filled.

In response, the plaintiff asserts that there is sufficient direct and circumstantial evidence to establish the requisite causal connection between his prior EEO activity and the denial of the Peer Support Technician position in 2007. In the alternative, the plaintiff contends that he has established a prima facie case of retaliation regarding the Peer Support Technician position and that the defendant's proffered nondiscriminatory reason is pretextual. The plaintiff makes similar arguments regarding both the 2004 Health Technician position and the 2001/2002 Domiciliary Assistant position. Specifically, he argues that he has established a prima facie case of retaliation for the denial of both positions and that he has provided sufficient evidence that the defendant's proffered nondiscriminatory reasons for both denials are pretextual.

Title VII of the Civil Rights Act of 1964 prohibits retaliation by employers against employees who have, through the EEO complaint process, "opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff may prove that unlawful retaliation has occurred by using either the direct or the indirect burden-shifting method of proof. Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009); Luks v. Baxter Healthcare Corp., 467 F.3d 1049, 1052 (7th Cir. 2006) (noting that the "distinction between the two avenues of proof is "vague." [citation omitted].

- 15 -

In Luks, the court explained that "'direct' proof of discrimination is not limited to near-admission by the employer that its decisions were based on a proscribed criterion (e.g. 'You're too old to work here.'), but also includes circumstantial evidence which suggests discrimination, albeit through a longer chain of inferences." 467 F.3d at 1052 (citing Sylvester v. SOS Children's Villages Illinois, Inc., 453 F.3d 900, 902-03 [7th Cir. 2006]). The court went on to explain that the 'indirect' method of proof involves a subset of circumstantial evidence (including the disparate treatment of similarly situated employees) that conforms to the prescription of McDonald Douglas Corp. v. Green, 411 U.S. 792, 803 (1973)." 453 F.3d at 1052.

Under the direct method of proof, a plaintiff must put forth evidence that [his] employer's decision to terminate [the employee] had a discriminatory motivation." Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 695 (7th Cir. 2006). A plaintiff must show that: "(1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two." Erickson, 569 F.2d at 786 (citing Argyropoulos v. City of Alton, 539 F.3d 724, 733 [7th Cir. 2008]). The plaintiff is not required to present evidence, such as outright admissions of discrimination, but may present "sufficient circumstantial evidence" of discrimination. Ptasznik, 464 F.3d at 695. "But such circumstantial evidence must point directly to a discriminatory reason for the termination decision." Id.

The court of appeals for this circuit has established that "[s]peculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions." Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000) (citing Stagman v. Ryan, 176 F.3d 986, 1001 [7th Cir. 1999]); see also, Wyninger v. New Venture

- 16 -

Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004) (quoting Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 [7th Cir. 2002]) ("There is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, but it is clear that 'mere temporal proximity' is not enough to establish a genuine issue of material fact.").

When proceeding under the indirect method, a plaintiff must establish a prima facie case of retaliation by showing that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action by his employer; (3) "he was performing his job satisfactorily"; and (4) he nevertheless "was treated less favorably than a similarly situated employee who did not complain of discrimination." Stephens, 569 F.3d at 786-87. The court of appeals for this circuit has described the evidence necessary to properly analyze whether two candidates are similarly situated as follows:

> The similarly situated inquiry is a flexible, common-sense comparison based on "substantial similarity" rather than a strict "one-to-one mapping between employees," but still requires "enough common features between the individuals to allow [for] a meaningful comparison." Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir. 2007), aff'd, 128 S. Ct. 1951 (2008). A meaningful comparison is one which serves "to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." Id.

Argyropoulos v. City of Alton, 539 F.3d 724, 735 (7th Cir. 2008) (alteration in original); see also, Rogers v. City of Chicago, 320 F.3d 748, 755 (7th Cir. 2003) (quoting Grayson v. O'Neill, 308 F.3d 808, 819 [7th Cir. 2002]) ("A similarly situated employee is one who is 'directly comparable to [the plaintiff] in all material respects.'").

If a plaintiff satisfies each element of his prima facie case, "the burden shifts to the defendant to provide a nondiscriminatory reason for the employment action." Volovsek v. Wis. Dep't of Agric., Trade, and Consumer Protection, 344 F.3d 680, 692 (7th Cir. 2003). If the

- 17 -

employer offers evidence of such a legitimate, nondiscriminatory reason, the plaintiff must counter with evidence that this reason is pretextual. Id. If a plaintiff fails to provide sufficient evidence of any of the four elements of his prima facie case, or of pretext if such proof is required, the defendant is entitled to summary judgment. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002).

The plaintiff is proceeding under both the direct and indirect methods on his claim related to the 2007 denial of the Peer Support Technician position. As for his remaining two claims, the plaintiff apparently proceeds under only the indirect method.[4] Because the majority of the evidence put forth by the parties relates to the plaintiff's denial for the Peer Support Technician position in 2007, the court will address that claim first.

The parties agree that the plaintiff has satisfied the first element of both the direct and indirect methods – engaging in statutorily protected activity – by virtue of the various EEO complaints he has filed against the VA and its employees during his employment. The parties also agree as to the second element of both methods, i.e., that the plaintiff's denial for the Peer Support Technician position was a materially adverse employment action. See Stephens, 569 F.3d at 787 ("[T]he retaliatory denial of a promotion is a materially adverse action."). Under the direct method, the only question is whether the plaintiff has provided

---

[4] The plaintiff's brief does not indicate directly which method he is proceeding under for these two claims. It does, however, conclude the section addressing these claims with the following paragraph: "Based on the foregoing, it is clear that [the plaintiff] has established his prima facie case of retaliation and has shown that the [defendant's] proffered reason cannot be believed. Therefore, the [defendant's] Motion for Summary Judgment must be denied." (Plaintiff's Brief at 22). The court infers from this language that the plaintiff is proceeding under only the indirect method on the claims related to the 2001/2002 Domiciliary Assistant position and the 2004 Health Technician position.

sufficient evidence of a causal connection between his statutorily protected activity and the defendant's adverse employment action.

_____The plaintiff has presented no direct evidence to prove this causal connection, i.e., "evidence that a decisionmaker essentially admitted that he took action against [the plaintiff] because [he] complained of discrimination." Rogers, 320 F.3d at 754. He therefore relies solely on circumstantial evidence, or "evidence that allows a jury to infer intentional discrimination by the decisionmaker." Id. (citing Gorence v. Eagle Food Ctrs., Inc., 242 F.3d 759, 762 [7th Cir. 2001]; Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 396 [7th Cir. 1997]). More specifically, the plaintiff asserts that the following undisputed facts establish the necessary causal connection: (1) the decision to deny the plaintiff the Peer Support Technician position was made only a few days after Mr. Thompson had looked at the EEO document in the plaintiff's OPF, and (2) shortly after looking at the EEO document in the plaintiff's OPF, Mr. Thompson told Ms. Mehalic that the plaintiff had filed an EEO complaint.

The plaintiff also argues that two other pieces of evidence support an inference of intentional discrimination: (1) the fact that EEO documentation was improperly placed in the plaintiff's OPF at all, and (2) some, if not all, of the EEO documentation was removed and shredded by an employee of the defendant during the discovery phase of a separate EEO complaint investigation. (Plaintiff's Brief at 6-9). The plaintiff claims that these facts show that "the Agency," or the VA, had a retaliatory "animus toward [the plaintiff's] decision to engage in statutorily protected [activity]." This animus, regardless of whether those two facts actually prove its existence, cannot be imputed to the decisionmakers for the positions the plaintiff claims he was wrongfully denied, absent evidence that these decisionmakers were personally involved in the placement or removal of the EEO documentation from the plaintiff's OPF, or

- 19 -

that they had directed such activity. Without evidence connecting the decisionmakers to these actions, the actions are simply irrelevant to the decisionmakers' motives in denying the plaintiff the positions that form the basis of his claims. See Rogers, 320 F.3d at 754 ("[U]nder the direct method a plaintiff must provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason.").

_____Here, the undisputed facts show that before the plaintiff's interviewers became aware of the plaintiff's prior EEO activity, they had rated him at least twenty-nine points lower (on a 120-point scale) than each of the four candidates who ultimately received the positions. Furthermore, and again prior to learning of the plaintiff's previous EEO activity, Mr. Thompson discovered that the plaintiff's 2004 and 2005 performance appraisals indicated that he needed to work on his interpersonal skills and that the plaintiff had refused to sign the 2005 appraisal. All of this caused Mr. Thompson to downgrade the plaintiff as a candidate. This ability to interact with others was important because one of the requirements of the Peer Support Technician position was "[k]nowledge and skills to teach and engage in problem-solving and conflict resolution strategies." (Thompson Decl., Exh. 1 at 2). The undisputed facts also show that the plaintiff submitted a handwritten application with scratched out words, although he had access to a computer system at the ZVAMC which would have allowed to submit a clean, typed application.

Only after all of these events had already occurred did Mr. Thompson learn, and subsequently inform Ms. Mehalic, that the plaintiff had previously engaged in EEO activity. Nonetheless, the plaintiff argues that Mr. Thompson's discovery and transmittal of this information prove that his decision to deny the plaintiff the Peer Support Technician position was impermissibly motivated by the plaintiff's prior EEO activity. The undisputed facts show,

however, that when Mr. Thompson first observed the EEO document in the plaintiff's OPF, he did not know what the document was. He only found out that it was an EEOC complaint after asking a co-worker what the document was. The undisputed facts further establish that Mr. Thompson did not read the document and, therefore, was not aware of any of the details of the plaintiff's prior EEO activity.

The plaintiff has shown that he was denied the Peer Support Technician position shortly after the decision makers became aware of his earlier EEO activity. However, he has not presented facts to establish a causal connection between his protected activities and the adverse employment action. Mere temporal proximity is insufficient to establish a causal connection. See Wyninger, 361 F.3d at 981. Thus, the plaintiff has failed to not establish a retaliation claim under the direct method of proof.

As for the plaintiff's prima facie case under the indirect method of proof, he has established the first two elements – (1) he engaged in statutorily protected activity, and (2) he suffered a materially adverse employment action. However, he must establish the remaining two elements, namely that he was performing his job satisfactorily, and that he was treated less favorably than other similarly situated individuals who did not complain of discrimination. See Stephens, 569 F.3d at 786-87. Although the 2004 and 2005 appraisals indicate that the plaintiff needed to improve his interpersonal communications skills, the evidence establishes that he received favorable employment reviews. The plaintiff's performance appraisals from 2004 through 2006 rated him as either "successful" or "fully successful." Thus, the court concludes that the plaintiff has shown he was performing his job satisfactorily.

However, the plaintiff has not established the fourth element of his prima facie case, specifically that he was treated less favorably than other similarly situated individuals who did

- 21 -

not complain of discrimination. Although, the plaintiff argues that he is similarly situated to the four individuals chosen for the Peer Support Technician positions, he has not presented any admissible evidence regarding the four successful candidates that would allow for the "meaningful comparison." See Argyropoulos. See 539 F.3d at 735. Rather, the plaintiff offers only his subjective belief that he was either more qualified than, or at least as qualified as, each of the four successful candidates. This subjective belief is insufficient to establish an inference of retaliation. See Stephens, 569 F.3d at 788.

Moreover, the plaintiff has presented no evidence regarding whether the four candidates who received the positions had ever complained of employment discrimination. It is the plaintiff's burden to establish the fourth element of his prima facie case. See Rogers, 320 F.3d at 755 (holding that the plaintiff failed to prove her prima facie case without evidence that allegedly similarly situated employee had not filed a discrimination complaint); Volovsek, 344 F.3d at 692 n.8 (same). Accordingly, the plaintiff has not established under either the direct method or the indirect method of proof that the defendant unlawfully retaliated against him in denying him the Peer Support Technician position in 2007.

The plaintiff's remaining claims involve the denial of a Health Technician position in 2004 and of a Domiciliary Assistant position in either 2001 or 2002. Similar to his claim regarding the Peer Support Technician position, both of the plaintiff's remaining claims are based on the alleged improper inclusion of EEO documentation in his OPF.

As for the plaintiff's claim related to the 2004 Health Technician position, the undisputed facts show that the plaintiff did not have sufficient time in grade to qualify for the position and that the relevant decisionmaker for that position, Marilyn Denning, was unaware of the plaintiff's prior EEO activity at the time he was denied the position. See Luckie v. Ameritech

- 22 -

Corp., 389 F.3d 708, 715 (7th Cir. 2004) ("At minimum, therefore, [the plaintiff] must offer evidence that would support a reasonable inference that [the decisionmaker] was aware of [the plaintiff's] allegations of discrimination.").

Furthermore, the plaintiff has failed to produce any evidence that other similarly situated individuals who did not file discrimination complaints were treated more favorably. In fact, the plaintiff has offered no evidence at all regarding the other candidates for the positions. Thus, the plaintiff has failed to establish his retaliation claim related to the denial of the 2004 Health Technician position and the defendant is entitled to summary judgment on this claim.

As for the plaintiff's claim relating to the 2001/2002 Domiciliary Assistant position, the record is devoid of any evidence to support this claim. There is no evidence that the plaintiff's OPF contained any EEO documentation at the time he was denied the position. Rather, the only document known to have been placed in the plaintiff's OPF, namely the settlement agreement granting the plaintiff a Health Technician position, was not signed until June, 2003, and thus could not have been placed in the OPF prior to that date. Additionally, the plaintiff has not presented evidence that he was performing his job satisfactorily at the time he was denied the Domiciliary Assistant position in 2001 or 2002.

Even he had presented such evidence that he was performing his job satisfactorily, he has not presented any evidence regarding any other candidates for the position, let alone any similarly situated individuals outside the plaintiff's protected class. Without such evidence, the plaintiff cannot establish his retaliation claim with regard to the 2001/2002 Domiciliary Assistant position. The defendant is therefore entitled to summary judgment on this claim as well.

- 23 -

In sum, the plaintiff has failed to offer sufficient evidence to prove that the defendant unlawfully retaliated against him by denying him the Peer Support Technician position in 2007, the Health Technician position in 2004, and the Domiciliary Assistant position in 2001 or 2002. The defendant's motion for summary judgment will therefore be granted as to all of the plaintiff's claims.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **granted**. (Docket #20).

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of March, 2010.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge